IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| PLUMBERS AND PIPEFITTERS LOCAL UNION NO. 630 PENSION-ANNUITY TRUST FUND, Derivatively on Behalf of Community Health Systems, Inc., and ROOFERS LOCAL NO. 149 PENSION FUND, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 3:11-cv-00489 |
| | | Judge Nixon |
| Plaintiffs, | | Magistrate Judge Knowles |
| v. | | JURY DEMAND |
| WAYNE T. SMITH, et al., | | |
| Defendants. | | |

## ORDER

Pending before the Court is Defendants Wayne T. Smith, et al.'s Motion for Reconsideration of Order Granting In Part and Denying In Part Motion to Dismiss ("Motion for Reconsideration"). (Doc. No. 89.) For the reasons given below, Defendant's Motion for Reconsideration is **DENIED** and Defendant's Motion to Ascertain Status of Case (Doc. No. 103) is **TERMINATED AS MOOT**.

I. BACKGROUND

    *A. Factual Background*

The Court adopts the factual background set forth in its order on Defendants' Motion to Dismiss. (Doc. No. 87 at 1–9.)

    *B. Procedural Background*

Plaintiffs filed a Complaint in this Court on May 24, 2011 (Doc. No. 1), and subsequently filed an Amended Consolidated Complaint on March 15, 2012 ("Complaint") (Doc. No. 50),

1

following the consolidation of this case with two other shareholder derivative lawsuits filed in this district (Case Nos. 3:11-cv-00952, 3:11-cv-00598) (Doc. No. 46). Plaintiffs originally alleged (1) breach of fiduciary duty; (2) gross mismanagement; (3) corporate waste; and (4) unjust enrichment, all derivatively on behalf of Community Health Systems, Inc. ("CHS"), a Delaware corporation that operates general acute care hospitals throughout the country with its executive offices located in Franklin, Tennessee. (Doc. No. 50.) Defendants filed a Motion to Dismiss on May 14, 2012 (Doc. No. 53), with a Memorandum in Support (Doc. No. 54), a declaration of John R. Jacobson (Doc. No. 55), and several exhibits (Doc. Nos. 55-1 to 55-11). Plaintiffs filed a Response on July 13, 2012 (Doc. No. 58), to which Defendants filed a Reply on August 27, 2012 (Doc. No. 60). The Court heard oral arguments on the Motion to Dismiss on June 13, 2013. (Doc. No. 73.)

On September 27, 2013, the Court granted Defendants' Motion to Dismiss with respect to Plaintiffs' claims for gross mismanagement, corporate waste, and unjust enrichment while denying Defendants' Motion with respect to Plaintiffs' breach of fiduciary duties claim. (Doc. No. 87.) On October 14, 2013, Defendants filed a Motion for Reconsideration (Doc. No. 89), along with a Memorandum of Law in Support (Doc. No. 90) and a Motion to Stay Discovery (Doc. No. 91). Plaintiffs filed an Opposition to Defendants' Motion for Reconsideration of Order Granting In Part and Denying In Part Motion to Dismiss on October 30, 2013. (Doc. No. 95.)

II. **LEGAL STANDARD**

Federal Rule of Civil Procedure 59(e) allows district courts to alter or amend a judgment "if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804,

2

834 (6th Cir. 1999) (internal citations omitted). However, a Rule 59(e) motion "does not simply provide an opportunity to reargue a case." *Whitehead v. Bowen*, 301 F. App'x 484, 489 (6th Cir. 2008). "Such a motion is extraordinary and is seldom granted because it contradicts notions of finality and repose." *Gascho v. Global Fitness Holdings, LLC*, 918 F. Supp. 2d 708, 714 (S.D. Ohio, 2013).

"[A] Rule 59(e) motion 'may not be used to argue a new legal theory.'" *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007) (quoting *FDIC v. World Univ., Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)). Instead, a party "must either clearly establish a manifest error of law or must present newly discovered evidence." *Id.* "Rule 59(e) motions are aimed at *re*consideration, not initial consideration. Thus, parties should not use them to raise arguments which could, and should, have been made before judgment issued." *World Univ., Inc.*, 978 F.2d at 16 (citations and internal quotation marks omitted); *see also Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (internal citations omitted).

### III. ANALYSIS

In their Motion for Reconsideration, Defendants request the Court reconsider its previous order on Defendants' Motion to Dismiss because it was improperly analyzed. (Doc. No. 89.) First, Defendants implore the Court to reconsider inferences it made regarding the Board of Directors' involvement with admissions policies because those inferences were not well-pleaded in Plaintiffs' complaint and are disproved by documents before the Court. Second, Defendants contend that because Plaintiffs did not allege any viable damages that might be recoverable by the corporation, the Plaintiffs failed to state a cognizable claim for breach of fiduciary duty. Both contentions are unfounded and will be discussed in turn.

## A. Impermissible Inferences Regarding Admissions Policies

Under Rule 23.1(b)(3) of the Federal Rules of Civil Procedure, a shareholder derivative complaint must meet a "demand requirement," meaning that the plaintiffs must state with particularity "(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." Because Plaintiffs concede that they did not make a demand on the Board before filing this suit, they pled demand futility. Where, as here, Plaintiffs do not challenge a specific board decision, they must meet the test set forth in *Rales v. Blasband*, 634 A.2d 927 (Del. 1993). Under the *Rales* test, courts must decide

> Whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand.

*Id.* at 934.

This Court concluded that it had "an adequate basis to infer that reasonable doubt exists" based on two inferences. (Doc. No. 87 at 17.) First, this Court inferred "that all director Defendants were involved in revising and approving at least one operative version of the Blue Book between 2000 and 2009" because "all director Defendants were serving by August 2009, by which time the Board had approved four revised versions of the Blue Book." (*Id.* at 18.) Defendants contend that this inference is impermissible because it was not well-plead in Plaintiffs' complaint:

> As the Complaint never alleges that any of the Director Defendants at any time approved revisions of the Blue Book, such a claim is not "well-pleaded" and the Court need not and should not draw such an inference. The erroneous inclusion of these inferences, which <u>exclusively form the basis of Plaintiffs' breach of fiduciary duty claim, constitutes a manifest error of both fact and law, thereby warranting reconsideration in the interests of justice.</u>

4

(Doc. No. 90 at 7–8.) *See, e.g., Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1971) (holding that a court is required to accept only well-pleaded facts as true).

Defendants are correct that the complaint does not specifically reference the approval of any revisions to the Blue Book. However, in Paragraph 54, Plaintiffs do allege that "Defendants incorporated in the Blue Book a significantly more subjective and liberal criteria for admitting patients than the accepted clinical decision-making and evidence-based, clinical criteria used by peer hospital systems across the country." (Doc. No. 50 ¶ 54.) Plaintiffs also alleged that Defendants "developed a set of admissions criteria for Community Health known as the 'Blue Book'" (*id.* ¶ 49) before later referencing the myriad revisions to the Blue Book (*id.* ¶¶ 52–55). While the phrase "incorporated in the Blue Book" is more general than "adopted revisions of the Blue Book," the allegation is both sufficiently particularized and well-pleaded. *See Brehm v. Eisner*, 746 A.2d 244, 255 (Del. 2000) (concluding that "Plaintiffs are entitled to all reasonable factual inferences that logically flow from the particularized facts alleged"). Defendants have failed to clearly establish that this inference constitutes a manifest error of law. *See World Univ., Inc.*, 978 F.2d at 16.

Second, this Court inferred "that Defendants were aware that obtaining significant increases in admissions rates . . . could not have been done without using improper means" because of "Defendants' wealth of knowledge and experience . . . combined with their diligence and concern with increasing admissions rates at CHS hospitals." (Doc. No. 87 at 18.) Defendants assert that this inference is "based on a facially inaccurate reading of CHSI documents." (Doc. No. 90 at 8.) Specifically, Defendants refer to Plaintiffs' reliance on the minutes from a September 17, 2007, Board meeting: Plaintiffs claim that the Board "discussed how Community Health could cause a 50% increase in admissions at Triad Hospital's

5

emergency department by implementing the ProMed system." (Doc. No. 50 ¶ 61.) Defendants contend that the relevant slide from the presentation—which says that a benefit of the ProMed System is "50% of admissions from [the emergency department]"—"merely notes generally that 50% of hospital admissions at Triad hospitals come through the emergency department . . . to justify the expenditure of $13.5 million to implement a new software package." (Doc. No. 90 at 9–10.)

This argument mirrors one that Defendants made after oral arguments concluded, when they first introduced evidence of the presentation slide. (Doc. No. 75.) The Court considered this evidence when denying in part Defendants' motion to dismiss; a Rule 59(e) motion "does not simply provide an opportunity to reargue a case." *Whitehead*, 301 F. App'x at 489. Even if Defendants were not rehashing old arguments, their interpretation of the slide itself is questionable—especially considering that the slide also references that "[emergency department] execution" is a "key volume building tool." (Doc. No. 90 at 9.) Defendants have failed to clearly establish that this second inference—based not only on this one meeting but also on the allegation that "the Board held several meetings between 2007 and 2010 in which the directors received updates on admissions levels at various CHS hospitals"—is a manifest error of law. (Doc. No. 87 at 18.)

### B. *Failure to Set Forth a Cognizable Theory of Damages*

Lastly, Defendants argue that Plaintiffs have failed to plead cognizable damages and that "[a]ccordingly, because there are no conceivable damages, the breach of fiduciary duty claim has not been sufficiently pleaded and should be dismissed." (Doc. No. 90 at 14.) Defendants base this argument on the Court's dismissal of Plaintiffs' claims for gross mismanagement, waste, and unjust enrichment and contend that the Court's failure to dismiss this claim constitutes manifest

6

error. However, in deciding a Rule 12(b)(6) motion, a plaintiff must merely allege "facts that would allow it to recover some damages on its breach of fiduciary duty claim." *United States v. Douglas*, 626 F. Supp. 621, 623 (E.D. Va. 1985). Because Plaintiffs have alleged at least one potential way to recover cognizable damages, Defendants have once again failed to clearly establish manifest error.

Plaintiffs allege that Community Health "has already suffered and will continue to suffer due to Defendants' improper admission practices." (Doc. No. 95 at 16; *see* Doc. No. 50 ¶¶ 86–103.) Plaintiffs contend that "Community Health is in danger of incurring significant liability arising from its improper Medicare-billing practices which include treble damages and a penalty of up to $11,000 per false claim." (Doc. No. 50 ¶ 87.) However, "[c]ourts have found damages unrecoverable where they are contingent 'on the outcome of a class action suit in which no judgment has been entered or settlement reached.'" *In re Facebook, Inc., IPO Secs. & Derivative Litig.*, 922 F. Supp. 2d 445, 474 (S.D.N.Y. 2013) (quoting *In re Cray Inc.*, 431 F. Supp. 2d 1114, 1133 (W.D. Wash. 2006)); *see also In re Symbol Techs. Secs. Litig.*, 762 F. Supp. 510, 516 (E.D.N.Y. 1991). Therefore, although these speculative, future damages to the company are not recoverable by Plaintiffs, Plaintiffs can recover any legal expenses and investigation expenses that have already occurred as a result of previous lawsuits and investigations against Community Health (*see* Doc. No. 50 at ¶¶ 86–103). *In re Cendant Corp. Derivative Action Litig.*, 189 F.R.D. 117, 134–35 (D.N.J. 1999) ("Here, unlike *Symbol Technologies*, [Defendant] has already incurred legal expenses . . . ."). Moreover, like in *Cendant*, the Plaintiffs have alleged recoverable harm to the company as a result of a failed merger (*see* Doc. No. 50 at ¶ 91). *Id.*

Thus, because Plaintiffs allege at least one way to recover cognizable damages, Defendants have not clearly established that the Court's decision not to dismiss Plaintiffs' breach of fiduciary duty claim constitutes manifest error.

IV. **CONCLUSION**

The Court finds Defendants have not presented sufficient grounds to reconsider its decision to deny Defendants' Motion to Dismiss with respect to Plaintiffs' breach of fiduciary duties claim. Defendants do not argue any newly discovered evidence exists that was not previously accessible nor do they identify any clear error of law in the Court's prior ruling or show the Court's ruling was manifestly unjust. Accordingly, Defendants' Motion for Reconsideration (Doc. No. 89) is **DENIED**.

It is so ORDERED.

Entered this the 19th day of December, 2014.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT